11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

American Home Assurance
Company, Inc. and

The Travelers Indemnity
Company

 

Appellants

Vs.                   No. 11-02-00212-CV B
Appeal from Dallas County

Unauthorized
Practice of Law Committee

Appellee

 

American Home Assurance Company, Inc. (American
Home) and The Travelers Indemnity Company (Travelers) sought a declaratory
judgment against the Unauthorized Practice of Law Committee (UPLC) that using
lawyers who are employees of an insurance company to defend insureds
under liability policies was not the unauthorized practice of law by the
insurer.  They also sought attorney=s fees from the UPLC.  The UPLC, an entity created by the Texas
Legislature and appointed by the Texas Supreme Court,[1]
counterclaimed for a declaratory judgment and for an injunction enjoining
American Home and Travelers from continuing to use staff attorneys to represent
their insureds. 
Both sides moved for summary judgment. 
The trial court entered a final judgment for the UPLC, holding that the
insurance companies were engaged in the unauthorized practice of law, but
staying its injunction pending this appeal. 
We reverse and render judgment for the insurance companies.  We reverse and remand for a determination of
the attorney=s fees
owed by the UPLC.

Principal Purpose Behind Prohibiting the Unauthorized
Practice of Law








Courts generally have prohibited the unauthorized
practice of law because of a perceived need to protect individuals and the
public from the mistakes of the untrained and the schemes of the unscrupulous,
who are not subject to the judicially imposed disciplinary standards of
competence, responsibility, and accountability. 
TEX. DISCIPLINARY R. PROF=L
CONDUCT 5.05 cmt. 1.[2]  The UPLC does not dispute the fact that staff
counsel of American Home and Travelers are properly trained and licensed to
practice law.  The UPLC also concedes
that Athere is
no evidence in the record regarding complaints by insureds@ despite the long period during which
insurance companies have used staff counsel.

Background

Insureds purchase
liability insurance to protect against the risk of defending a lawsuit and to
protect against the risk of having to pay a money judgment as a result of that
lawsuit.  The defense of a lawsuit
covered by liability insurance involves a Atripartite@ relationship consisting of the
insured, the insurer, and the defense counsel. 
Because this tripartite relationship may involve conflicts,[3]
there has been an ongoing national debate concerning the ethical obligations of
defense counsel and the role of the insurer in providing defense counsel.[4]  Use of staff counsel by insurance companies
has raised the issue of whether such use constitutes the unauthorized practice
of law by corporations.








Typical policies of insurance issued by American
Home and Travelers were introduced as part of the summary judgment
evidence.  Under the policies, the
insurer promises to defend and to indemnify the insured against certain risks
up to stated limits of liability.  The
insurer has the right and duty to provide a legal defense to a lawsuit against
the insured if the petition alleges a covered claim.  The Texas Supreme Court has recognized that a
liability policy may grant to the insurer the right to take complete and
exclusive control of the insured=s
defense; American Home and Travelers are granted that control under the
policies.  State Farm Mutual
Automobile Insurance Company v. Traver, 980
S.W.2d 625, 627 (Tex.1998), citing Douglas R. Richmond, Walking a
Tightrope:  The Tripartite Relationship
Between Insurer, Insured, and Insurance Defense Counsel, 73 NEB. L.
REV. 265, 269 (1994)(ABecause
of its financial interest in the effective resolution of a claim, the insurer
has a contractual right to control its insured=s
defense.@).








Prior to American Home and Travelers filing this
case, the UPLC brought suit in Dallas County against Allstate Insurance Company
and its staff counsel, alleging that Allstate was engaged in the unauthorized
practice of law.[5]  That suit by the UPLC provided the impetus
for both this case and for Nationwide Mutual Insurance Company v.
Unauthorized Practice of Law Committee, 283 F.3d 650 (5th Cir. 2002).  Nationwide sought a declaration by the
federal district court that the Texas State Bar Act,[6]
as interpreted by the UPLC, violates the federal constitution and that Texas
law does not prohibit it from employing salaried staff attorneys to represent
its insureds. 
Affirming the district court=s
abstention ruling, the Fifth Circuit held that abstention under the Pullman
Doctrine[7]
was proper and that Nationwide=s
case should have been dismissed without prejudice.  For Pullman abstention to be
appropriate, the Fifth Circuit explained that the case must involve (1) a
federal constitutional challenge to state action and (2) an unclear issue of
state law that, if resolved, would make it unnecessary for the federal court to
rule on the federal constitutional question. 
To satisfy the second prong, there must be an uncertain issue of state
law that is Afairly
susceptible@ to an
interpretation that would render it unnecessary for the federal court to decide
the federal constitutional question. 
After reviewing the Texas statutes and case law,  the Fifth Circuit concluded that  Texas Alaw
is fairly susceptible to a reading that would permit Nationwide to employ staff
counsel on behalf of its insureds.@ 
Id. at 655.

In 2001, two bills were introduced in the Texas
House of Representatives to prevent staff counsel from representing insureds.  TEX. H.B.
1383, 77th Leg., R.S. (2001), and TEX. H.B. 3563, 77th Leg., R.S. (2001).  Insurance companies introduced testimony that
the use of staff counsel has resulted in lower costs to the insurance companies
and lower premiums to the insureds.  Many of the arguments made here, especially
the UPLC=s ethical
arguments, were also made before the Texas Legislature.  The bills were not enacted into law.  

The insurance companies argue that the use of
staff attorneys is permissible because the attorneys, in addition to their
primary duty to the insured, are also defending the financial interest of the
insurance company because it is the entity that will pay any adverse judgment
against the insured, at least up to the policy amount.[8]  The UPLC contends that the use of staff
attorneys violates the Texas Disciplinary Rules of Professional Ethics.[9]  The UPLC argues that (1) no attorney can
serve two masters; (2) the insurance companies=
right to control and direct staff counsel violates the lawyer=s professional code of ethics because
he cannot exercise his independent judgment; and (3) therefore, use of staff
counsel should be prohibited because the employee-lawyer is subject to an
irreconcilable conflict between his employer and the insured.  The UPLC=s
statutory and case-law argument is based on the syllogism: (1) a corporation
cannot practice law; (2) staff attorneys, whose sole client is the insured, are
agents of the insurance corporation; and (3) therefore, the insurance company
is practicing law.[10]









The standards for reviewing summary judgments are
well-settled.  Nixon v. Mr. Property
Management Company, Inc., 690 S.W.2d 546 (Tex.1985); City of Houston v.
Clear Creek Basin Authority, 589 S.W.2d 671 (Tex.1979).  When both sides move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both sides=
summary judgment evidence, determine all questions presented, and render the
judgment that the trial court should have rendered.  Lubbock County, Texas v. Trammel=s Lubbock Bail Bonds, 80 S.W.3d
580, 583 (Tex.2002); Jones v. Strauss, 745 S.W.2d 898, 900
(Tex.1988).  

The UPLC=s
Argument Based on Ethics Rules

A.                
A Corporation=s
Right to Control Employees

Citing Darensburg
v. Tobey, 887 S.W.2d 84, 88 (Tex.App.
B Dallas 1994, writ den=d), the UPLC argues that employers have
the right to direct the details of the work of their employees.  From this premise, the UPLC concludes that
the insurance company=s
right to control the details of the work of staff attorneys creates an
irreconcilable conflict with the interests of the insured because insurance
companies will interfere with their staff attorney=s
exercise of professional judgment.

The UPLC argument begins with a false
premise.  In Darensburg,
the court recognized that the employer Adid
not have the right to direct and control@
the employee physician=s
exercise of professional judgment.  Darensburg v. Tobey,
supra at 89.  An employee attorney
does not owe an absolute duty of loyalty to his or her employer.  Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 201 (Tex.2002).  In Johnson,
an associate employed at the Brewer & Pritchard law firm referred a
potential client to an attorney, Johnson, who was not in the firm.  After the associate left the firm, the law
firm sued the associate and Johnson, claiming that the associate owed an
absolute fiduciary duty to abstain from referring potential clients to any firm
except the associate=s
employer.  Id. at 202-03.  The Johnson court held that the
associate=s ethical
duty to the client outweighed the firm=s
interest in demanding loyalty from its associates. Id. at 203. 

The insurance staff attorney, like the outside
attorney, may face conflicts; however, his status as an employee is not an
irreconcilable conflict.  There is no
evidence in the record that staff attorneys face conflicts not faced by outside
attorneys.  Potential conflicts are
inherent in the tri-partite relationship, and those ethical concerns are
properly addressed by the Texas grievance system.








The UPLC urges that the Texas Disciplinary Rules
of Professional Conduct are not enforceable against a corporation and that,
therefore, Aprofessional
discipline cannot be enforced against the insurance company no matter how much
they attempt to control their lawyer-employee=s
practice.@  We agree with the statement, but the same is
true where outside counsel is used.  Lack
of disciplinary authority over an insurance company using staff attorneys could
not have been a basis for the trial court=s
summary judgment for the UPLC.

B.                
No Violation of Professional Ethics Rules

The American Bar Association (ABA) recently
reaffirmed its earlier rulings that nothing in the ethics rules prohibits
insurance staff counsel from defending insureds.  ABA Comm. on Ethics and Prof=l Responsibility, Formal Op. 03-430
(2003). The Texas Disciplinary Rules of Professional Conduct (Rules), adopted
in 1990, were modeled after the American Bar Association=s
Model For Professional Conduct (Model Rules). 
Thus, formal opinions of the ABA=s
Committee on Ethics and Professional Responsibility are persuasive authority
unless the Texas Rule differs from the Model Rule in a material respect.  A detailed comparison of the Rules and the
Model Rules can be found at Cornell University=s
Legal Information Institute=s
website.[11]         

 The UPLC
argued in its motion for summary judgment that the following Texas Rules were
violated: 1.05 (Confidentiality of Information); 1.06 (Conflict of Interest:
General Rule); 2.02 (Evaluation for Use by Third Persons); 5.04(c) & (d)
(Professional Independence of a Lawyer); 5.05 (Unauthorized Practice of Law);
7.06 (Prohibited Employment); 8.03 (Reporting Professional Misconduct); and
8.04 (Misconduct).  We have examined the
Texas Rules and the Model Rules on which the Texas Rules were based.  Nothing in the Texas Rules supports a
conclusion that it is unethical for insurance staff counsel to represent insureds.

 ABA Formal
Opinion 282 was one of the opinions reaffirmed in ABA Formal Opinion
03-430.  The ABA Committee on Ethics and
Professional Responsibility in 1950 first addressed the ethical aspects of the
issue now before us.  In its Formal
Opinion 282, the ABA Committee concluded:

There
is nothing basically unethical in a lawyer, who is employed and compensated by
a collision insurance company, defending a person in an action based upon
damage to person and property brought by a third party.

 

ABA Formal Opinion 282 was relied on by the Texas Committee on
Professional Ethics in its Opinion 260 in 1963. 
In Opinion 260, the Texas Committee approved an insurance company=s use of staff counsel to defend its insureds and to prosecute subrogation cases on behalf of
the company.  Opinion 260 indicates that
insurance companies in Texas have been using staff counsel to represent their insureds at least since 1963.

The use of insurance staff counsel in Texas
existed even before 1963.  Op. Tex.
Ethics Comm=n
No. 167 (March 1958) ruled that mere employment of insurance staff attorneys is
not any evidence of Atheir
being exploited in violation of the ethics rules.@  Texas ethics rules at that time were also
based on the ABA rules.  We have compared
the current Texas Rules with the ethical rules in effect in 1958 and in 1963.  Nothing has been added to the current Rules
that would alter the conclusion reached in Opinion Nos. 167 and 260.

C.        One Client or Two Clients

The UPLC emphasizes that Texas is a Aone-client@
state, meaning that the insured is the only client.  Again, this argument involves ethical choices
and the rules for professional conduct, not the unauthorized practice of
law.  








Moreover, the Texas Supreme Court has not
expressly held that Texas is a one-client state.[12]  In Opinion 260, the Texas Committee on
Professional Ethics recognized that the attorney had two clients.  The supreme court in Employers Casualty
Company v. Tilley, 496 S.W.2d 552, 558 (Tex.1973), also viewed the outside
attorney as having two clients, the insurer and the insured.  The Tilley court=s analysis was in terms of a lawyer
representing two or more clients with differing interests.  The concurring opinion faulted the majority
for not finding that the lawyer=s
duties ran only to the insured.  Id.
at 563.

  The
supreme court in State Farm Mutual Automobile Insurance Company v. Traver, supra at 628, did state that Athe lawyer owes unqualified loyalty to
the insured@ and that
Athe lawyer must at all times protect
the interests of the insured if those interests would be compromised by the
insurer=s
instructions.@  That statement was dicta and does not
preclude the insurer being a client, at least when there is no conflict.  Traver held
that the insurance company was not vicariously liable for the conduct of the
lawyer because he was an independent contractor.  Footnote No. 6 in American Physicians
Insurance Exchange v. Garcia, 876 S.W.2d 842, 844 (Tex.1994), did state
that the lawyer was the insured=s
and that he did not represent one of the two insurance companies. The footnote
appears related to the facts in that case; it does not appear to be the
statement of a general rule.[13]








Reality and common sense dictate that the
insurance company is also a client.  The
insurance company retains the attorney, controls the legal defense, decides if
the case should be settled, and pays any judgment or settlement amount up to
policy limits.  It is a fiction to say
that the insured is the only client in view of the contractual relationships.  We agree that the insured is the primary
client and that ethical choices must be resolved in favor of the insured.  But under contract law, the attorney can have
two clients.[14]  The Aone-client,
two-client@ argument
speaks to ethical conflicts, not to whether an insurance company is engaged in
the unauthorized practice of law. 
Tennessee, for example, considers itself a one-client state, but has
declared that its ethics rules do not support a finding that the use of staff
attorneys is the unauthorized practice of law. 
In re Youngblood, 895 S.W.2d 322, 330-31 (Tenn.1995).  Likewise, we conclude that there is nothing
in the Texas Rules that would be a basis for finding that American Home and
Travelers have engaged in the unauthorized practice of law.

Determining that use of staff attorneys to
represent insureds does not violate the Texas Rules
does not, however, determine whether an insurance company is engaged in the
unauthorized practice of law.

The UPLC=s
Statutory and Case-Law Grounds for Summary Judgment

The UPLC first cites TEX. BUS. CORP. ACT. ANN.
art. 2.01B(2) (Vernon 2003) for the proposition that a corporation may not be
organized for the practice of law:

B.         No corporation may adopt this Act or be organized under this
Act or obtain authority to transact business in this State under this Act:

 

(2)        If any one or more of its purposes for the transaction
of business in this State is to engage in any activity which cannot lawfully be
engaged in without first obtaining a license under the authority of the laws of
this State to engage in such activity and such a license cannot lawfully be
granted to a corporation. (Emphasis added)

 

The UPLC then points out that a corporation may not obtain a law
license because only an individual may obtain a license to practice law in
Texas.  TEX. GOV=T
CODE ANN. ' 81.051
(Vernon 1998).

The short answer is that an insurance company is
not organized to practice law.  The
purpose of an insurance company is to indemnify its insureds;
the agreement to defend and pay attorney=s
fees is purely contractual and collateral to that purpose.  Article 2.01B(2) is not violated.  We turn next to what is the Apractice of law.@








The State Bar Act defines the Apractice of law@
as the preparation of legal documents and the rendering of legal services Aon behalf of a client.@ TEX. GOV=T
CODE ANN. '
81.101(a) (Vernon Supp. 2002).  Texas has
long recognized that a corporation=s
own interests may be represented through staff attorneys. A lay person may
represent himself and so may a corporation, although the corporation=s representative in court must be an
attorney.  Moore v. Elektro-Mobil Technik GMBH,
874 S.W.2d 324 (Tex.App. - El Paso 1994, writ den=d); Bar Ass=n of Dallas v. Hexter
Title & Abstract Co., 175 S.W.2d 108, 116 (Tex.Civ.App.
B Fort Worth 1943), aff=d, Hexter
Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist.,
State Bar of Texas, 179 S.W.2d 946 (Tex.1944).  Both staff attorneys and outside attorneys
are agents of the corporation.  San
Antonio Bar Association v. Guardian Abstract & Title Company, 291
S.W.2d 697 (Tex.1956); Hexter Title &
Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of
Texas, supra at 954.  When a
staff or outside attorney represents his or her corporation=s interest in a matter, the corporation
is not practicing law because it is not acting (through its agents) Aon behalf of a client.@

The UPLC argues that, when a staff attorney is the
corporation=s agent
and acts Aon behalf
of an [insured],@ that is
the practice of law by the corporation. 
Logically, of course, if use of a staff attorney to represent an insured
is the practice of law, then use of an outside attorney is also the practice of
law.  American Home and Travelers contend
that there is no Apractice
of law@ because the
attorney is representing the insurance company=s
direct financial interest. 
Alternatively, they also argue that, if the tripartite relationship is
the practice of law, it is authorized.

There is nothing in the State Bar Act that
declares the use of staff attorneys to represent insureds
to be the unauthorized practice of law. 
Texas law has recognized the use of staff and outside attorneys in
representing insureds for almost 50 years.  Other jurisdictions have consistently
recognized Texas as allowing staff attorneys to represent insureds.  

A review of Texas law begins with the cases of United
Services Automobile Ass=n
v. Zeller, 135 S.W.2d 161 (Tex.Civ.App. B San Antonio 1939, writ dism=d
judgm=t
cor.), and Utilities Ins. Co. v. Montgomery,
138 S.W.2d 1062 (Tex.1940).  At the time
of Zeller and Montgomery, Article 430a of the 1925 Texas Penal
Code, captioned ACorporation
or association practicing law,@
adopted in 1933, provided in part:

Section 1. 
It shall be unlawful for any corporation or any person, firm, or
association of persons, except natural persons who are members of the bar
regularly admitted and licensed, to practice law.

 

However,
Section 3 of Article 430a contained a specific exclusion for insurance
companies:

 

And provided, further, that nothing herein shall
prohibit any insurance company from causing to be defended, or prosecuted, or
from offering to cause to be defended, through lawyers of its own selection,
the insureds or assureds in policies issued or to be
issued by it, in accordance with the terms of such policies; and shall not
prohibit one such licensed attorney at law from acting for several common
carriers or other corporations and associations or any of its subsidiaries
pursuant to arrangement between said corporations or associations. (Emphasis
added)








The Zeller court summarily rejected an
argument that a policy obligating the insurance company to defend suits brought
against the insured was a contract to practice law and, therefore, void.  United Services Automobile Ass=n v. Zeller, supra at 166.

In Montgomery, Montgomery sued Smith, an
insured.  The insurance company denied
coverage but provided defense counsel under a non-waiver agreement.  The non-waiver agreement stipulated that, by
defending the suit, the insurance company did not waive its right to rely on
every provision of the insurance policy and that the insurance company did not
agree that it would pay any judgment rendered in favor of Montgomery against Smith.  After obtaining a judgment against Smith,
Montgomery sued the insurance company to collect.  Montgomery argued that the non-waiver
agreement was void because, under the terms of the agreement, the insurance
company Acontracted
to engage in the practice of law contrary to [Article 430a].@ 
Utilities Ins. Co. v. Montgomery, supra at 1064.  Implicit in the decision was an assumption
that the original liability policy fell within the exclusion in Section 3 of
Article 430a.  The question was whether
the non-waiver agreement also would be found to be within the exclusion.  Montgomery argued that the insurer denied
that it had any interest in the suit yet it employed counsel and provided a
legal defense for Smith.  The court found
that the non-waiver agreement was also within the statutory exclusion and,
therefore, was not void.  After quoting
the above exclusion, the court explained:

Clearly in this case the Company was not an
intermeddler.  It had some contingent
interest to protect.  While it claimed
then, as now, that no liability could attach to it, yet it did not have a
judicial determination of that issue for its protection.  Montgomery was claiming that the risk fell
within the coverage of the policy, and the non-waiver agreement should be
considered in the light of the facts and circumstances as they then
existed.  Thus viewed the Insurance
Company was seeking to protect its own interests rather than those of Smith.
(Emphasis added)

 

Utilities Ins. Co. v. Montgomery, supra at 1064.

Although Article 430a was repealed in 1949 and
although there is no comparable statutory exemption in Article 2.01B(2) today,
even the UPLC acknowledges that the exemption for insurance companies contained
in Article 430a is still the law in Texas where the insurer hires outside
counsel.  It is logically inconsistent to
say that Montgomery is the law where outside counsel is used, but it is
not still the law where staff counsel is used.








Despite the logical inconsistency of its position
and despite Montgomery, the UPLC relies on Hexter
Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist.,
State Bar of Texas, supra, to support its argument that the use of staff
attorneys constitutes the unauthorized practice of law by the insurance
companies.  Hexter
also relied on Article 430a but found that the corporation in that instance was
engaged in the unauthorized practice of law because of its use of staff
attorneys to draw deeds and other instruments for land transactions in which
the corporation had no interest.  Hexter did not mention Montgomery, no
doubt because the Hexter court recognized that
insurance companies issuing liability policies with promises to provide a legal
defense had a direct financial interest in the outcome of the litigation and
Section 3 of Article 430a expressly provided that they were not engaged in the
unauthorized practice of law.

The UPLC=s
reliance on Hexter is misplaced.  As the Fifth Circuit pointed out in Nationwide,
Hexter is factually distinguishable from the
use of staff attorneys to represent an insured. 
Hexter involved the use of staff
attorneys by an agent of a title company to prepare deeds, releases, and mortgages
involving transactions to which the insurance company was not a party and in
which the insurance company had no interest. 
Although the corporation argued that it needed to prepare all papers
necessary to place good title in the applicant so that the title company could
then safely insure the title to the property, the court said:

We
are of the opinion, however, that the preparation of such papers is not the
business of the insurance company.  In
this connection, it should be noted that this suit does not involve the right
of the corporation to prepare the contract of insurance to which the insurance
company would be a party, nor does it relate to documents prepared to cover the
release or discharge of the company from obligations previously incurred by
it.  These transactions involve
conveyances, releases, and mortgages from grantors to grantees, and to which
the insurance company is not a party. 
They are executed for the purpose of placing good title in the grantee,
so that the insurance company may thereafter insure the title if it
chooses.  Such papers relate to the
rights of third parties in which the corporation has no present interest, but
only a prospective one.

 








Hexter Title & Abstract
Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas,
supra at 952.  The Hexter court explained that corporations may
use staff attorneys to practice law if they possess a present financial
interest in the matter. Id. at 952. 
Hexter held that the corporation was
engaged in the unauthorized practice of law because it had no interest in the
legal transactions; its interest was in insuring title to the property.  Hexter is
not on point because there was no tripartite relationship involving Hexter Title. 
American Home and Travelers have a direct financial interest in the
insured=s
litigation; Hexter Title had no direct financial
interest in the various transactions.    The Texas Supreme Court has recognized the
logical inconsistency of the UPLC=s
position.  If a corporation is engaged in
the unauthorized practice of law, it does not matter whether the corporation is
utilizing staff counsel, as in Hexter, or
outside counsel.  In both situations, the
attorneys are the agents of the corporation. 
In San Antonio Bar Association v. Guardian Abstract & Title
Company, supra, Guardian attempted to avoid Hexter
by having the instruments prepared by the law firm of McQuown
& McQuown, even though the facts were otherwise
the same as in Hexter.  The law firm charged separate fees for
preparing the instruments, but nearly all of the corrective legal work was
referred by Guardian to the McQuown law firm.  The court concluded from the record that the
title company was engaged in the unauthorized practice of law as in Hexter, because the outside attorneys were its
agents and the title company had no direct financial interest in the corrective
transactions.  The court recognized that
it was logically inconsistent to ban certain practices by a title company as
being the unauthorized practice of law if staff attorneys are used as in Hexter but not ban the practices if outside
attorneys are used.

Hexter is still
the law.  Section 1 of Article 430a is
embodied in Article 2.01B(2).  We believe
that the rule in Montgomery is also still the law in Texas.  Use of staff attorneys to represent insureds does not violate Article 2.01B(2) because the
purpose of an insurance company is to indemnify its insureds
for a fee.  When the insurance company
provides a staff or outside attorney to the insured, it is seeking to protect
its own interests.  Even if providing an
attorney is the practice of law by the insurance company, that does not
necessarily mean that it is the unauthorized practice of law.  Based on the reasoning in Montgomery
and Hexter, we hold that the use of staff
attorneys to represent insureds, like the use of
outside attorneys, is not the unauthorized practice of law because of the
insurance company=s direct
financial interest in the litigation brought against its insureds
by third parties.[15]








Texas Penal Code '
38.123

The UPLC next cites TEX. PENAL CODE ANN. ' 38.123 (Vernon 2003) which defines
certain acts as the Aunauthorized
practice of law@ for
purposes of criminal prosecution:

(a) A person commits an offense if, with intent to
obtain an economic benefit for himself or herself, the person:

 

(1) contracts with any person to represent that
person with regard to personal causes of action for property damages or
personal injury;

 

                                                                        *   *   *

 

(3) advises any person as to whether or not to
accept an offered sum of money in settlement of claims for personal injuries or
property damages;

 

                                                                        *   *   *

 

(5) enters into any contract with a third person
which purports to grant the exclusive right to select and retain legal counsel
to represent the individual in any legal proceeding.

 

(b) This section does not apply to a person
currently licensed to practice law in this state, another state, or a foreign
country and in good standing with the State Bar of Texas and the state bar or
licensing authority of any and all other states and foreign countries where
licensed....

 

TEX. PENAL CODE ANN. '
1.07(a)(38) (Vernon 2003) defines A[p]erson@
to mean Aan
individual, corporation, or association.@








When interpreting a statute, we seek to effectuate
the collective intent or purpose of the legislators who enacted the
legislation.  Boykin v. State, 818
S.W.2d 782, 785 (Tex.Cr.App.1991).  Under
Boykin, we interpret an unambiguous statute literally, unless doing so
would lead to an absurd result the legislature could not possibly have
intended.  Insurance companies are in the
business of entering contracts with third persons, their insureds,
that grant the right to the insurance company to retain legal counsel to
represent the insured Ain
personal causes of action@
against the insured.  But if insurance
contracts and the use of staff attorneys come within the literal language of
Section 38.123, then so would contracts involving the use of outside
attorneys.  Because a literal reading of
Section 38.123 leads to an absurd result in this case, we resorted to the legislative
history. Id. at 785.

Section 38.12 (Barratry and Solicitation of
Professional Employment),[16]
Section 38.122 (Falsely Holding Oneself Out as a Lawyer),[17]
and Section 38.123 (Unauthorized Practice of Law) were enacted together as part
of Senate Bill 1227, 73rd Leg., R.S., 1993 Tex. Sess.
Law Serv. ch. 723, '' 2 & 5.  The Bill Analysis in SENATE COMM. ON
JURISPRUDENCE, BILL ANALYSIS, 73rd Leg., S.B. 1227 (April 7, 1993), gave the
background and purpose as:

BACKGROUND        

 

Currently,
in Houston, persons involved in motor vehicle accidents are being solicited to
use the services of lawyers by wrecker drivers, law enforcement officers,
ambulance and EMS personnel, and medical personnel.  Additionally, those persons involved in the
accident are solicited by phone by attorneys who received information through
accident reports.  Statistics suggest
that up to 80 percent of all accident victims, and 100 percent of Aobvious fault@
accident victims are contacted whether or not injuries occur.

 

PURPOSE

 

As
proposed, S.B. 1227 makes provisions and provides penalties for the offenses of
barratry, falsely holding oneself out to be a lawyer, and the unauthorized practice
of law.

 

There is nothing in the legislative history that
even remotely suggests that the legislation was directed at insurance
contracts.  We hold that the insurance
companies have not violated Section 38.123 by contracting with their insureds and using staff attorneys to represent those insureds. 

The Majority Rule

Numerous cases and authorities have cited Montgomery.  One treatise on insurance law states that the
broad statutes prohibiting corporations from practicing law cannot be
interpreted too literally:

[T]he
line is not easy to draw.  It has even
been urged that a casualty insurer, in defending a suit brought against its
policyholder, would be engaged in the unauthorized practice of law.  That result, however was quickly reversed,
the higher court holding, and properly so it would seem, that the agreement to
defend and pay attorney=s
fees is purely collateral to the chief undertaking, which is the purpose of
insurance, of paying judgments rendered against the insured. 

 

Eric Mills Holmes, Holmes=
Appleman on Insurance Law and Practice ' 49.22 (2d ed.) (2002)(referring to Utilities
Ins. Co. v. Montgomery, supra).  The
treatise then observes:

The majority of authority facing the issue has
similarly held that an insurer does not engage in the unauthorized practice of
law by a corporation when it uses in-house counsel to represent an insured
under a liability policy, [although] that conclusion is not unanimous.

 








At least 20 states and 1 federal circuit court
have considered whether the use of insurance staff attorneys violates rules of
professional ethics or constitutes the unauthorized practice of law.[18]  All but North Carolina and Kentucky have
concluded that the use of staff attorneys is permissible.  Six of the state court decisions have cited Montgomery
as supporting the majority rule, even though Montgomery involved the use
of outside counsel.  See Gafcon, Inc. v. Ponsor &
Associates, 120 Cal. Rptr. 2d 392, 410 (Cal. Ct.
App. 2002); Coscia v. Cunningham, 299
S.E.2d 880, 882 (Ga.1983)(cited Montgomery for the proposition that the
defense of the insured is within the purview of the insurance company=s immediate affairs); Oda v. Highway Insurance Company, 194 N.E.2d
489, 495 (Ill. App. Ct. 1963); Cincinnati Insurance Company v. Wills,
717 N.E.2d 151, 155 (Ind.1999); In re Allstate Insurance Company, 722
S.W.2d 947, 950 (Mo.1987); Osborne v. Hartford Accident & Indemnity Co.,
476 S.W.2d 256, 267 (Tenn. Ct. App. 1971). 
Even Gardner v. North Carolina State Bar, 341 S.E.2d 517 (N.C.
1986), which held that the use of staff attorneys constitutes the unauthorized
practice of law, pointed out that Texas has a special rule for insurance
companies and cited Montgomery.

Law professors have continued to cite Montgomery
in support of such typical statements as:

A number of jurisdictions permit representation of
an insured by in-house counsel, but do so by special statute expressly designed
to address this situation.

  

Nancy J. Moore, The Ethical Duties of Insurance Defense
Lawyers:  Are Special Solutions Required?,
4 CONN. INS. L.J. 259, 296 (1997).  In
Michael D. Morrison & James R. Old, Jr.,  Economics, Exigencies and Ethics:  Whose Choice? Emerging Trends and Issues in
Texas Insurance Defense Practice, 53 BAYLOR L. REV. 349, 395 (2001), the
authors state:

The question of whether an insurance company may
properly employ salaried attorneys to represent insureds
in claims litigation has been addressed by numerous jurisdictions through court
decisions and ethics opinions.

 

The authorities cited by Morrison and Old include Montgomery,
indicating that these authors also read Montgomery as authorizing the
use of staff attorneys to represent insureds in Texas
under the exception in Article 430a which was in force at the time of Montgomery.








Three of the cases from other states have
expressly noted the logical inconsistency of an attempt to prevent an insurer
from employing staff attorneys to represent insureds
while allowing the insurer to retain outside counsel to represent insureds.  Cincinnati
Insurance Company v. Wills, supra at 159-62; In re Allstate
Insurance Company, supra at 950; and In re Youngblood, supra
at 328-29.  Every argument by the UPLC,
except one, would prevent outside attorneys from representing insureds if staff attorneys are prevented from representing
insureds.  The
one exception is its argument that an employer may direct the details of a
staff attorney=s
representation of an insured and thereby interfere with his professional
judgment.  The employer does not have
that right.  Johnson v. Brewer &
Pritchard, P.C., supra.

Conclusion

The purpose behind prohibiting the unauthorized
practice of law is to protect the public from the mistakes of those who are not
properly trained and licensed to practice law. 
There is nothing in this record to demonstrate that staff counsel should
not represent insureds.  They are properly trained and licensed to
practice law.

Potential ethical conflicts are inherent in the
tripartite relationship, but there is no evidence in the record that staff
attorneys face conflicts not faced by outside attorneys.  Texas Committee on Professional Ethics
Opinion Nos. 167 and 260 correctly concluded that the use of staff attorneys to
represent insureds does not violate the ethics
rules.  Use of staff attorneys to
represent insureds does not violate the current Texas
Rules.

Use of staff attorneys to represent insureds is not the unauthorized practice of law.  As Montgomery pointed out, the
insurance company in providing an attorney to the insured is Aseeking to protect its own interests.@ 
Even though the attorney does represent the insured, the insurance
company is not practicing law because of the company=s
direct financial interest in the litigation against the insured.  There is no violation of TEX. BUS. CORP. ACT
ANN. art. 2.01B(2) because the purpose of an insurance company is to indemnify
its insureds. 
The agreement to defend and pay attorney=s
fees is collateral to that purpose.  TEX.
PENAL CODE ANN. ' 38.123
was enacted to prevent  Awrecker drivers, law enforcement
officers, ambulance and EMS personnel, and medical personnel@ from soliciting car accident victims
to use certain lawyers.  Section 38.123
was not directed at insurance companies.

Consistent with the majority of state courts that
have addressed the issue, we hold that insurance companies do not engage in the
unauthorized practice of law by using staff counsel to represent their insureds and that the mere use of staff attorneys to
represent insureds does not violate the Texas
Disciplinary Rules of Professional Conduct.

This Court=s
Ruling

We reverse and render judgment for American Home
and Travelers.  The injunction is
dissolved.  We reverse and remand for a
determination of the attorney=s
fees owed by the UPLC.

 

TERRY McCALL

JUSTICE

 

November 6, 2003

Panel
consists of:  Arnot,
C.J., and 

Wright,
J., and  McCall, J.

 











[1]See In re Nolo Press/Folk
Law, Inc., 991 S.W.2d 768, 772
(Tex.1999).





[2]Reprinted in TEX. GOV=T CODE
ANN., tit. 2, subtit. G app. A (Vernon 1998).





[3]For example, there may be disagreements between the
insurer and the insured over conduct of the litigation due to (1) the insured=s concern over the side effects of litigation, such as
publicity and reputation, or about a personal or business relationship with the
plaintiff; (2) the preference of the insured for a more expensive effort than
the insurer is willing to make; and (3) the possibility that the insurer has
some additional interest in the outcome of a particular lawsuit, such as its
desire to obtain a precedential ruling that will
benefit the insurer in other cases. Charles Silver & Kent Syverud, The Professional Responsibilities of Insurance
Defense Lawyers, 45 DUKE L.J. 255, 266 (1995).





[4]Daniel M. Martinez, Insurance Companies Use of ACaptive@
or In-House Counsel To Represent Insureds Constitutes
The Unauthorized Practice of Law: Is American Home the Right Decision For
Texas?, 34 ST. MARY=S L.J. 1007 (2003); Charles Silver, When Should
Government Regulate Lawyer-Client Relationships? The Campaign to Prevent
Insurers from Managing Defense Costs, 44 ARIZ. L. REV. 787 (2002); Michael
D. Morrison & James R. Old, Jr., Economics, Exigencies and Ethics: Whose
Choice? Emerging Trends and Issues in Texas Insurance Defense Practice, 53
BAYLOR L. REV. 349 (2001); Ellen S. Pryor & Charles Silver, Defense
Lawyers= Professional Responsibilities: Part IIBContested Coverage Cases, 15 GEO. J. LEGAL ETHICS 29 (2001);  Ellen S. Pryor & Charles Silver, Defense
Lawyers= Professional Responsibilities: Part IBExcess Exposure,
78 TEXAS L. REV. 599 (2000); Nancy J. Moore, Conflicts of Interest for In‑House
Counsel: Issues Emerging from the Expanding Role of the Attorney‑Employee,
39 S. TEXAS L. REV. 497 (1998); David A. Hyman, Professional Responsibility,
Legal Malpractice, and the Eternal Triangle: Will Lawyers or Insurers Call the
Shots?, 4 CONN. INS. L.J. 353 (1997); Nancy J. Moore, The Ethical Duties
of Insurance Defense Lawyers: Are Special Solutions Required?,  4 CONN. INS. L.J. 259 (1997); Thomas D.
Morgan, What Insurance Scholars Should Know About Professional
Responsibility, 4 CONN. INS. L.J. 1 (1997); Stephen L. Pepper, Applying
the Fundamentals of Lawyers=
Ethics to Insurance Defense Practice,
4 CONN. INS. L.J. 27 (1997); Charles Silver, Flat Fees and Staff Attorneys:
Unnecessary Casualties in the Continuing Battle Over the Law Governing
Insurance Defense Lawyers, 4 CONN. INS. L.J. 205 (1997); Robert J. Johnson,
Comment, In-House Counsel Employed by Insurance Companies:  A Difficult Dilemma Confronting the Model
Code of Professional Responsibility, 57 OHIO ST. L.J. 945 (1996); Douglas
R. Richmond, Lost in the Eternal Triangle of Insurance Defense Ethics, 9
GEO. J. LEGAL ETHICS 475 (1996); Charles Silver & Kent Syverud,
The Professional Responsibilities of Insurance Defense Lawyers, 45 DUKE
L.J. 255 (1995); Leo J. Jordan & Hilde E. Kahn, Ethical
Issues Relating to Staff Counsel Representation of Insureds,
30 TORT & INS. L.J. 25 (1994); Ronald E. Mallen, Defense
by Salaried Counsel: A Bane or a Blessing?, 61 DEF. COUNS. J. 518 (1994);
Douglas R. Richmond, Walking a Tightrope: The Tripartite Relationship
Between Insurer, Insured, and Insurance Defense Counsel, 73 NEB. L. REV.
265 (1994); Charles Silver, Does Insurance Defense Counsel Represent the
Company or the Insured?, 72 TEXAS L. REV. 1583 (1994).





[5]The parties advise that the case is still pending.  See Unauthorized Practice of Law Comm. v.
Collins, No. 98-8269 (298th Dist. Ct., Dallas County, Texas).





[6]TEX. GOV=T CODE ANN. ' 81.001
et seq. (Vernon 1998 & Supp. 2003).





[7]Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941).





[8]Amici curiae briefs in support of the insurance companies= position have been received from Allstate Insurance
Co., USAA Property and Casualty, Zurich American Insurance Co., Liberty Mutual
Insurance Company, and Progressive Casualty Insurance Company; Staff Counsel
Attorneys; and The Texas Association of Business, The American Insurance
Association, The Alliance of American Insurers, The National Association of
Independent Insurers, The National Association of Mutual Insurance Companies,
and Non-Staff Attorneys Lipscomb Norvell, Jr.,
Harrison Yoss, Jack Latson,
G. Byron Sims, Donald G. Henslee, Susan Abbott
Schwartz, Mark Clemer, Mark A. Lindow,
D. Bradley Kissia, David Dunn, and David L. Treat.





[9]TEX. DISCIPLINARY R. PROF=L CONDUCT
reprinted in TEX. GOV=T CODE ANN., tit. 2, subtit.
G app. A (Vernon 1998 & Supp. 2003)(TEX. STATE BAR R. art. X, ' 9).





[10]Amici curiae briefs in support of the UPLC=s position have been received from the Texas
Association of Defense Counsel and Dr. Christopher Hull.





[11]The website is http://www.law.cornell.edu/ethics/.





[12]The most direct statement by a court is found in Bradt v. West, 892 S.W.2d 56, 77 (Tex.App. B Houston [1st Dist.] 1994, writ den=d)(AThere is no attorney-client relationship between an
insurer and an attorney hired by the insurer just to provide a defense to one
of the insurer=s insureds.@).  The court
cited Employers Casualty Company v. Tilley, supra, but Tilley
viewed the attorney as having two clients.





[13]The footnote states that, although Crossland
was paid by Insurance Corporation of America (ICA) and American Physicians
Insurance Exchange (APIE), Crossland was Dr. Garcia=s, not APIE=s
attorney.  In the body of the opinion,
the court stated that AICA retained Ross Crossland
and his law firm to assume primary responsibility for Garcia=s defense.  APIE
hired another attorney to >simply monitor the developments in this lawsuit.=@ APIE concluded that Dr. Garcia=s alleged malpractice was not covered by its
policy.  Crossland
informed the plaintiffs= attorney that he had been advised by APIE that he did Anot in any manner represent@ APIE=s interests. The footnote did not state whether Crossland was ICA=s
attorney, only that he did not represent APIE.





[14]Normally, the attorney-client relationship is based on
contract.  This is an additional reason
why we hesitate to read supreme court dicta as declaring that the outside or
staff attorney can never have both the insured and insurer as clients.  See Charles Silver, Does Insurance Defense
Counsel Represent the Company or the Insured?, 72 TEXAS L. REV. 1583
(1994)(lawyer represents both insured and insurer if retainer agreement so
provides).





[15]As the UPLC pointed out to the trial court below, the
statute repealing Article 430a stated that the act was being repealed because
it:

[H]as no practical value for the suppression of
unauthorized practice of law for the reason that the State Bar Act, subsequently
enacted (Acts, 1939, Forty-Sixth Legislature, Page 64) prohibits all persons
not members of the FOOTNOTE 15 CONTINUED:

 

State Bar from practicing law, and under the
Constitution, the judicial department of the State government has power to
define the practice of law and by civil proceedings protect the public from its
practice by laymen and corporations, and the further fact that the presence of
said Act on the books has created, and tends to create, much confusion.

 

Act of May 19, 1949, 51st Leg., R.S., ch. 301, H.B. No. 209. 
Article 430a was repealed because it was unnecessary, not because the
legislature wanted to change Hexter or Montgomery.  





[16]TEX. PENAL CODE ANN. ' 38.12
(Vernon 2003).





[17]TEX. PENAL CODE ANN. ' 38.122
(Vernon 2003).





[18]Joplin v. Denver-Chicago Trucking Co., 329 F.2d 396 (8th Cir. 1964); Gafcon,
Inc. v. Ponsor & Associates, 120 Cal. Rptr. 2d 392 (Cal. Ct. App. 2002); King v. Guiliani, No. CV92-0290370-S, 1993 WL 284462 (Conn.
Super. Ct. July 27, 1993); In re Rules Governing the Conduct of Attorneys in
Florida, 220 So.2d 6 (Fla.1969); Coscia
v. Cunningham, 299 S.E.2d 880 (Ga.1983);

Kittay v.
Allstate Ins. Co., 397 N.E.2d 200 (Ill. App. Ct. 1979); Cincinnati Insurance
Company v. Wills, 717 N.E.2d 151 (Ind.1999); 

American Insurance Association v. Kentucky Bar
Association, 917 S.W.2d 568 (Ky.1996); In re Allstate Insurance Company, 722 S.W.2d 947 (Mo.1987); In re Weiss, Healey
& Rea, 536 A.2d 266 (N.J.1988); Gardner v. North Carolina State Bar,
341 S.E.2d 517 (N.C.1986); Strother v. Ohio
Casualty Insurance Co., 14 Ohio Op. 139, 1939 Ohio Misc. LEXIS 1184 (Ct.
Comm. Pleas 1939); In re Youngblood, 895 S.W.2d 322 (Tenn.1995);  Hardware Mut.
Casualty Co. v. Higgason, 134 S.W.2d 169
(Tenn.1939); Amendment to Rules Regulating the Florida Bar, Re: Rules of
Professional Conduct No. SC02-1689 (Fla. S.Ct.
January 23, 2003); and Final Report of the Board of Commissioners on the
Unauthorized Practice of Law of the Supreme Court of Ohio in Cincinnati Bar
Association v. Allstate Insurance Company, Case No. UPL 02-02 (Oct. 1,
2003).  Ethics opinions include Alabama
Ethics Op. RO-81-533 (1981); Alaska Bar Ethics Committee Op. 99-3 (1999);
Arizona Ethics Op. 75-4 (1975); Cal. Ethics Op. 1987-91 (1987); Colorado Formal
Ethics Op. 91 (1993); Report of the Florida Bar Association=s Special Commission on Insurance Practices II (2002);
Illinois State Bar Ass=n, Advisory Opinion on Prof. Conduct, Op. No. 89-17
(1990); Michigan Bar Op. CI-1146 (1986); New Jersey Sup. Ct. Advisory Comm. on
Unauthorized Practice, Op. 23, 114 N.J.L.J. 421 (1984); New York Bar Op. 109
(1969); and Virginia Bar Op. 60 & 598 (1985).